101 S.W.3d 771 (2003)
In the Interest of N. R., a Child.
No. 06-02-00083-CV.
Court of Appeals of Texas, Texarkana.
Submitted March 20, 2003.
Decided March 21, 2003.
*773 Rick McPherson, law Office of Rick McPherson, Carthage, for appellant.
Lana Shadwick, Houston, for appellee.
*774 Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION
CARTER, Justice.

I. Nature of the Case
Robert Rogers appeals an order terminating the parent-child relationship between him and his daughter, N.R. In five points of error, he contends the evidence was both factually and legally insufficient to support the termination.

II. Factual and Procedural Background
The Department of Protective and Regulatory Services first began its investigation into the well-being of N.R. in July 2000. At that time, N.R. was five years old and living with Rogers. Rogers had been N. R.'s managing conservator since she was three or four years old. Stephanie Hodge, N. R.'s mother, was incarcerated during the course of the Department's investigation. The Department sought and received from Hodge a voluntary relinquishment of her parental rights to N. R.
Thereafter, the Department filed an action to terminate Rogers' parental rights to N.R. under the procedures provided in Tex. Fam.Code Ann. §§ 161.001-.211 (Vernon 2002). The trial court terminated Rogers' parental rights to N.R. on the grounds alleged in the Department's petition. This appeal followed.

III. Discussion
A. Burden of Proof
The burden of proof in parental termination cases is clear and convincing evidence. Tex. Fam.Code Ann. § 161.001; In re J.F.C., 96 S.W.3d 256, 263 (Tex., 2002). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. In re C.H., 89 S.W.3d 17, 25-26 (Tex.2002).
B. Standards of Review
1. Legal Sufficiency
When reviewing a point of "no evidence" or legal sufficiency in the context of a parental rights termination, we look at all the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." See J.F.C., at 266. If, after conducting our review of the record, we determine no reasonable fact-finder could form a firm belief or conviction the matter that must be proven is true, then we conclude the evidence is legally insufficient. See id.
2. Factual Sufficiency
When reviewing a factual sufficiency challenge to a parental rights termination, we consider the evidence the fact-finder could reasonably have found to be clear and convincing. See id.; C.H., 89 S.W.3d at 25-26. In applying this standard to a trial court's findings, we ask whether there was sufficient evidence presented to produce in the mind of a rational fact-finder a "firm belief or conviction as to the truth of the allegations sought to be established." See Tex. Fam.Code Ann. § 101.007 (Vernon 2002); see also J.F.C., at 264. If the answer to this question is yes, then we must overrule the factual sufficiency point.
We recognize that the natural right existing between parents and their children is one of constitutional dimension. See In re J.W.T., 872 S.W.2d 189, 194-95 (Tex.1994). A parent's right to "the companionship, care, custody, and management" *775 of his or her children is a constitutional interest "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). Therefore, we strictly scrutinize both the termination proceedings and the involuntary termination statutes in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985).
C. Analysis
To terminate parental rights in Texas, the evidence must establish: (1) a statutory ground for termination; and (2) the termination is in the child's best interest. Tex. Fam.Code Ann. § 161.001(1). On appeal, Rogers focuses on the statute's first prong, contending the evidence supporting a statutory ground for termination is both legally and factually insufficient. Rogers does not contend termination of his parental rights is not in N. R.'s best interest.
In its petition, the Department alleged five separate grounds under Tex. Fam.Code Ann. § 161.001.[1] The trial court found there was clear and convincing evidence supporting each of the Department's alleged grounds. Only one statutory ground is required to terminate parental rights under Section 161.001. See, e.g., In re S.F., 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.) (concluding "only one finding alleged under section 161.001(1) is necessary to a judgment of termination"). Therefore, we will affirm the trial court's order if there is both factually and legally sufficient evidence on any statutory ground on which the trial court relied in terminating Rogers' parental rights. See id.
1. Tex. Fam.Code Ann. § 161.001(1)(D), (E)
In his first two points of error, Rogers challenges the factual sufficiency of the evidence supporting a finding under Tex. Fam.Code Ann. § 161.001(1)(D), (E). Specifically, he contends the evidence is factually insufficient to show: (1) he knowingly placed or knowingly allowed N.R. to remain in conditions or surroundings that endangered her physical or emotional well-being; or (2) he engaged in conduct or knowingly placed N.R. with persons who engaged in conduct which endangered N. R.'s physical or emotional well-being. Because of the close evidentiary relationship of these two grounds, we will review them together.
"Endangerment" is an element of both subsections (D) and (E). In an involuntary termination proceeding, "endanger" means conduct that is more than a threat of metaphysical injury or the possible ill effects of a less than ideal family environment. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987). However, the child does not need to suffer actual physical injury to constitute endangerment. Id. "Rather, `endanger' means to expose to loss or injury; to jeopardize." Id.; see also In re M.C., 917 S.W.2d 268, 269 (Tex.1996) (per curiam). Endangerment can occur through both the acts and omissions of the parent. Phillips v. Tex. Dep't of Protective & Regulatory Servs., 25 S.W.3d 348, 354 (Tex.App.-Austin 2000, no pet.). Neglect can be just as dangerous to a child's well-being as direct abuse. M.C., 917 S.W.2d at 270.
Tex. Fam.Code Ann. § 161.001(1)(D) applies only to the acceptability of a child's living conditions or surroundings; it does not apply to the conduct *776 of the parent toward the child. In re S.H.A., 728 S.W.2d 73, 84 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Under subsection (D), it must be the environment itself that causes the child's physical or emotional well-being to be endangered, not the parent's conduct. Id. at 84-85. Thus, subsection (D) can only be utilized as a ground for termination if the child is placed in conditions or surroundings that are themselves dangerous to his or her physical or emotional well-being; parental conduct alone is insufficient under this subsection. See In re T.L.H., 630 S.W.2d 441, 446 (Tex.App.-Corpus Christi 1982, writ dism'd w.o.j.) (interpreting predecessor statute with identical language). The environment must pose a real threat of injury or harm to the child, Williams v. Texas Department of Human Services, 788 S.W.2d 922, 926 (Tex.App.-Houston [1st Dist.] 1990, no writ), overruled on other grounds, In re J.N.R, 982 S.W.2d 137, 143 (Tex.App.-Houston [1st Dist.] 1998, no pet.), and there must be proof of a direct causal connection between the environment, in which the child is placed or allowed to remain and the resulting danger to the child's physical or emotional well-being to warrant termination under subsection (D). Ybarra v. Tex. Dep't of Human Servs., 869 S.W.2d 574, 577-78 (Tex.App.-Corpus Christi 1993, no writ); S.H.A., 728 S.W.2d at 85. However, it is not necessary for the parent to have certain knowledge that an actual injury is occurring; it is enough that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. In re Tidwell, 35 S.W.3d 115, 119-20 (Tex.App.-Texarkana 2000, no pet.).
By contrast, when reviewing a finding under Tex. Fam.Code Ann. § 161.001(1)(E), the focus is exclusively on the parent's conduct, not the child's environmental surroundings. In re P.S., 766 S.W.2d 833, 835 (Tex.App.-Houston [1st Dist.] 1989, no writ). Subsection (E) does not require there be danger of physical harm; proof of conduct that endangers a child's emotional well-being alone is sufficient. TEX. FAM.CODE ANN. § 161.001(1)(E); S.H.A., 728 S.W.2d at 85. The cause of the danger to the child's physical or emotional well-being, however, must be the parent's conduct by way of actions, inactions, or omissions. See id. But the specific danger to the child's well-being need not be established as an independent proposition; it may be inferred from parental misconduct. See Boyd, 727 S.W.2d at 533. In addition, it is not necessary that the conduct was directed at the child at issue or that the child actually suffered injury. Id. "Endanger" in this context means "to expose to loss or injury; to jeopardize." Id. Thus, there is no requirement of any "actual and concrete" threat of injury to the child's physical or emotional well-being. Id.; Dir. of Dallas County Child Protective Servs. Unit of Tex. Dep't of Human Servs. v. Bowling, 833 S.W.2d 730, 733 (Tex.App.-Dallas 1992, no writ). In short, subsection (E) is satisfied simply by proof that a parental course of conduct endangered a child's physical or emotional well-being. Boyd, 727 S.W.2d at 534; In re R.D., 955 S.W.2d 364, 368 (Tex. App.-San Antonio 1997, pet. denied); Bowling, 833 S.W.2d at 733.
a. The Evidence
The following evidence was presented at trial relevant to both subsections (D) and (E) of the Texas Family Code.
Several witnesses testified of Rogers' propensity for extensive physical abuse to both N.R. and others. Barbara Walker, a Child Protective Services (CPS) caseworker assigned to investigate N. R.'s case, testified CPS had received fourteen separate reports on the family; four classified as "reason to believe" physical abuse. *777 Walker testified there would be a substantial risk to N. R.'s physical safety if she went back to Rogers' home. Walker testified that part of CPS's concern for N. R.'s safety was based on case files involving another child, D.H. These case files showed Rogers had his parental rights terminated to D.H. for extensive physical abuse.
In addition to Walker's testimony, Mark May, Rogers' former roommate, testified. According to May, he witnessed Rogers strike N. R., causing her to fall from a freezer and fracture her arm. May testified that, before Rogers struck N. R., Rogers had been "shooting up" in the bathroom and was under the influence of oxycontins. In addition, May testified that, while N.R. lived with Rogers and in N. R.'s presence, May purchased drugs from Rogers "every day."
Julia Ingram, Rogers' biological daughter, also testified at trial about extensive physical abuse inflicted by Rogers to her and others. Specifically, Ingram testified Rogers physically abused her brother Randall by hitting him with sticks, beating his head against a tree, and whipping him with a telephone cord. She further testified Rogers on one occasion beat her with a belt buckle, drawing blood. On several other occasions, she witnessed Rogers beat her mother and other siblings. Ingram also testified Rogers has an uncontrollable temper, especially when he is drinking or under the influence of drugs. According to Ingram, while she lived with Rogers, he drank almost every day.
Hodge also testified Rogers is violent, especially when he drinks or takes drugs. During her testimony, she recounted a time when she witnessed Rogers whip D.H. with his belt for three hours, causing bruising.
Finally, two experts testified regarding N. R.'s physiological well-being. Each concluded N. R.'s behavior was consistent with a child coming from an abusive environment.
In addition to this testimony, the record contains an extensive criminal history on Rogers. Rogers has been arrested twenty times and charged with several different offenses: one charge each for kidnapping, sexual abuse, threat, dangerous drugs, public order crimes, and a weapons offense; ten times for assault; three times for driving while intoxicated; and several other various offenses. The record summary shows convictions for assault (two), weapons offense, DWI, and reckless conduct.
Based on the above, we conclude the evidence before the fact-finder was both legally and factually sufficient. Specifically, under subsection (D), a fact-finder could readily have reached the necessary firm conviction or belief that N.R. was placed and allowed to remain in an environment that endangered both her physical and emotional well-being. Likewise, under subsection (E), a fact-finder could readily have reached the necessary firm conviction or belief that Rogers' conduct, including selling drugs and excessive physical abuse to N.R. and others, endangered N. R.'s physical and emotional well-being. We also conclude a fact-finder could readily have reached the necessary firm conviction or belief that the extreme step of termination of Rogers' parental rights was in N. R.'s best interest.
2. Other Insufficiency Points Raised by Rogers
Having found the evidence both legally and factually sufficient to support the judgment based on Tex. Fam.Code Ann. § 161.001(1)(D) and (E), we do not need to consider whether the evidence was sufficient to support the judgment based on *778 Tex. Fam.Code Ann. § 161.001(1)(C), (F), and (Q).
We affirm the judgment of the trial court.
NOTES
[1] In its petition, the Department alleged Rogers violated TEX. FAM.CODE ANN. § 161.001(1)(C), (D), (E), (F), and (Q) (Vernon 2002).